**HI-TEC SPORTS USA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 97–24.**
**Court No. 94–06–00349.**

United States Court of
International Trade.

Feb. 12, 1997.

Law Offices of George R. Tuttle, and Stephen S. Spraitzer, for Plaintiff.

Frank R. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney–In–Charge, and Bruce N. Stratvert, New York City, International Trade Field Office, Civil Division, Dept. of Justice, Commercial Litigation Branch; Mark G. Nackman, United States Customs Service, of counsel, for Defendant.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

WALLACH, Judge.

This matter having come on for trial in San Francisco, California, on the 20th day of March, 1996, the parties having submitted it for decision and judgment after completion of the trial on the 22nd day of March, 1996, the Court having considered the parties' Post–Trial Briefs submitted the 3rd day of July, 1996, and their Reply Briefs submitted on the 22nd day of July, 1996, and having given due consideration to the testimony of two witnesses for Plaintiff, and four for Defendant, together with due consideration of all stipulated facts and all evidence admitted at trial, and the Court having made findings of fact and conclusions of law set forth in the Findings of Fact and Conclusions of Law entered on the 16th day of August, 1996 and amended on the 17th day of September, 1996, familiarity with which is assumed, and the Court having considered the parties' joint submission made pursuant thereto, entitled "Measurements of Leather and Textile Materials In Boots In Issue" (hereinafter, "Measurements of Leather"), and filed on October 15, 1996, and the attachments thereto, now the Court, pursuant to CIT Rule 52(a), finds additional facts and sets forth additional conclusions of law, and enters Judgment for Plaintiff pursuant to the Findings of Fact and Conclusions of Law as amended and these Supplemental Findings of Fact and Conclusions of Law.

### Findings of Fact

1) In the Court's earlier Findings of Fact and Conclusions of law, the Court determined which of the components of Hi–Tec's boots denominated Rainier II, Midnight, Gannett Peak II, Magnum, Kings Peak II, Sundance, and Sierra Lite II (collectively "the boots in issue") is part of the external surface of the boots to be included in the External Surface Area of the Upper ("ESAU") calculations, which the parties were ordered to undertake and submit. The Court now makes findings of fact regarding the percentages of the surface area of the uppers of the boots in issue that are com-

posed of leather and those composed of textile material.

2) By stipulation of the parties, Consumer Testing Laboratories, Inc. ("CTL") of Canton, Massachusetts measured the components of the surface of the boots in issue. The U.S. Customs Service approved the measurements. Measurements of Leather at p. 1.

3) The parties have agreed to accept as accurate the ESAU calculations made by CTL, and have submitted them to the Court. Accordingly, the Court admits them into evidence.

4) The leather and textile portions of the ESAU for each of the boots in question is as follows:

a) Based on the ESAU calculations submitted by the parties and the supporting documentation prepared by CTL, the Court finds that the ESAU composition of the Rainier II boot is as follows:

i) Leather Areas:

| | | |
|---|---|---|
| A–1 | (exposed) + A–1 overlapped by C–3 or C–4 | 20.4 in. [2] |
| A–2 | (exposed) | 21.4 in. [2] |
| A–3 | (exposed) + A–3 overlapped by C–3 or C–4 | 21.7 in. [2] |
| A–4 | (exposed) | 2.8 in. [2] |
| | total leather area | 66.3 in. [2] |

ii) Textile Areas: [1]

| | | |
|---|---|---|
| B–1 | (exposed) | 3.8 in. [2] |
| B–2 | (exposed) | 9.9 in. [2] |
| C–2 | (textile beneath C–2, which was stipulated to be an accessory excluded from ESAU) | 2.1 in. [2] |
| | total textile area | 15.8 in. [2] |

iii) Conclusion

The ESAU of the Rainier II boot is predominantly leather.

b) Based on the ESAU calculations submitted by the parties and the supporting documentation prepared by CTL, the Court finds that the ESAU composition of the Midnight boot is as follows:

i) Leather Areas:

| | | |
|---|---|---|
| A–1 | (exposed) + A–1 overlapped by C–2 or C–3 | 24.3 in. [2] |
| A–2 | (exposed) + A–2 overlapped by C–3 | 25.9 in. [2] |
| A–3 | (exposed) + A–3 overlapped by C–3 | 21.7 in. [2] |
| A–4 | (exposed) | 6.0 in. [2] |
| | total leather area | 77.9 in. [2] |

ii) Textile Areas

| | |
|---|---|
| B–1 + B–2 + B–3 | 17.7 in. [2] |
| B–4 | 1.3 in. [2] |
| total textile area | 19.0 in. [2] |

iii) Conclusion

The ESAU of the Midnight boot is predominantly leather.

c) Based on the ESAU calculations submitted by the parties and the supporting documentation prepared by CTL, the Court finds that the ESAU composition of the Gannett Peak II boot is as follows:

i) Leather Areas:

| | | |
|---|---|---|
| A–2 | (exposed) | 13.8 in. [2] |
| A–3 | (exposed) + A–3 overlapped by C–4 | 17.9 in. [2] |
| | total leather area | 31.7 in. [2] |

ii) Textile Areas

| | |
|---|---|
| Textile under A–4 | 7.4 in. [2] |
| Textile under A–5 | 5.3 in. [2] |
| B–1 (exposed) | 13.2 in. [2] |
| total textile area | 25.9 in. [2] |

iii) Conclusion

The ESAU of the Gannett Peak II boot is predominantly leather.

d) Based on the ESAU calculations submitted by the parties and the supporting documentation prepared by CTL, the Court finds that the ESAU composition of the Magnum boot is as follows:

i) Leather Areas:

| | | |
|---|---|---|
| A–1 | (exposed) + A–1 overlapped by C–2 or C–3 | 28.9 in. [2] |
| A–2 | (exposed) + A–2 overlapped by C–3 | 8.2 in. [2] |
| A–3 | (exposed) + A–3 overlapped by C–3 | 26.8 in. [2] |
| A–4 | (exposed) | 18.2 in. [2] |
| | total leather area | 82.1 in. [2] |

**1.** The parties have jointly submitted the textile areas referenced below in their ESAU calculations.

ii) Textile Area

| | |
|---|---|
| B–1 | 41.3 in.$^2$ |
| total textile area | 41.3 in.$^2$ |

iii) Conclusion

The ESAU of the Magnum boot is predominantly leather.

e) Based on the ESAU calculations submitted by the parties and the supporting documentation prepared by CTL, the Court finds that the ESAU composition of the Kings Peak II boot is as follows:

i) Leather Areas:

| | | |
|---|---|---|
| A–1 | (exposed) + A–1 overlapped by C–2 or C–3 | 12.9 in.$^2$ |
| A–2 | (exposed) | 0.7 in.$^2$ |
| A–3 | (exposed) + A–3 overlapped by C–2 or C–3 | 16.6 in.$^2$ |
| A–4 | (exposed) + A–4 overlapped by C–2 or C–3 | 6.6 in.$^2$ |
| A–5 | (exposed) + A–5 overlapped by C–2 or C–3 | 13.7 in.$^2$ |
| A–6 | (exposed) | 2.9 in.$^2$ |
| total leather area | | 53.4 in.$^2$ |

ii) Textile Areas

| | |
|---|---|
| B–1 (exposed) + B–2 (side areas) + B–3 (ankle areas) | 16.5 in.$^2$ |
| total textile area | 16.5 in.$^2$ |

iii) Conclusion

The ESAU of the King's Peak II boot is predominantly leather.

f) Based on the ESAU calculations submitted by the parties and the supporting documentation prepared by CTL, the Court finds that the ESAU composition of the Sundance boot is as follows:

i) Leather Areas:

| | | |
|---|---|---|
| A–1(a) | (exposed) + A–1(a) overlapped by C–2 or C–3 | 11.1 in.$^2$ |
| A–1(b) | (exposed) + A–1(b) overlapped by C–2 or C–3 | 5.5 in.$^2$ |
| A–2 | (exposed) | 5.2 in.$^2$ |
| A–5 | (exposed) + A–5 overlapped by C–2 or C–3 | 14.9 in.$^2$ |
| A–6 | (exposed) + A–6 overlapped by C–2 or C–3 | 22.5 in.$^2$ |
| A–8 | (exposed) | 11.2 in.$^2$ |
| total leather area | | 70.4 in.$^2$ |

ii) Textile Areas

| | |
|---|---|
| Textile under A–7 | 6.2 in.$^2$ |
| Textile under lower part of A–9 | 3.5 in.$^2$ |
| B–1 (exposed) | 5.1 in.$^2$ |
| B–2, B–3, B–4 and B–5 (exposed) | 11.7 in.$^2$ |
| total textile area | 26.5 in.$^2$ |

iii) Conclusion

The ESAU of the Sundance boot is predominantly leather.

g) Based on the ESAU calculations submitted by the parties and the supporting documentation prepared by CTL, the Court finds that the ESAU composition of the Sierra Lite II boot is as follows:

i) Leather Areas:

| | | |
|---|---|---|
| A–1 | (exposed) + A–1 overlapped by C–3 | 23.2 in.$^2$ |
| A–2 | (exposed) | 8.4 in.$^2$ |
| A–3 | (exposed) | 19.3 in.$^2$ |
| A–4 | (exposed) | 4.4 in.$^2$ |
| A–6 | (exposed) | 6.1 in.$^2$ |
| total leather area | | 61.4 in.$^2$ |

ii) Textile Areas

| | |
|---|---|
| Textile under A–5 (exposed) | 6.2 in.$^2$ |
| Textile under A–7 (exposed) | 5.0 in.$^2$ |
| B–1 (exposed) | 12.6 in.$^2$ |
| B–2 (exposed) | 4.0 in.$^2$ |
| total textile area | 27.8 in.$^2$ |

iii) Conclusion

The ESAU of the Sierra Lite II boot is predominantly leather.

Conclusions of Law

1) Note 4(a) to Chapter 64 of the Harmonized Tariff Schedule of the United States ("HTSUS") states that "material of the upper shall be taken to be the constituent material having the greatest external surface area, no account being taken of accessories or reinforcements."

2) Because the ESAU of each boot at issue is predominantly leather, for purposes of classification under HTSUS, each of the boots at issue constitutes footwear with uppers of leather.

3) Customs' classification of each of the boots at issue under HTSUS 6404.19.15, footwear with textile uppers, is incorrect.

4) Each of the boots at issue should be classified under HTSUS 6403.91.60, footwear with leather uppers.

5) Plaintiff is entitled to reclassification of the boots in issue under HTSUS 6403.91.60, and a refund of overpaid duties and interest in accordance with law.